UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNEL JACKSON<br><br>            Plaintiff,<br><br>    v.<br><br>RIVERA, *et al.*,<br><br>            Defendants. | Case No. 1:24-cv-00261-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 7)<br><br>**FOURTEEN (14) DEADLINE** |

Plaintiff Cornel Jackson ("Plaintiff") is a pretrial detainee proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. The Court screened Plaintiff's complaint and Plaintiff was granted leave to amend. Plaintiff's first amended complaint is before the Court for screening. (ECF NO. 7.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

1

1    A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences*." Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff, a pretrial detainee, is currently housed in the Madera County Sherriff's Office-Jail Division which is where the events in the complaint are alleged to have occurred. Plaintiff names as defendants: (1) Sgt. Rivera, (2) Cpl. Schmalls, (3) Cpl. Gill, (4) Joe Martinez, (5) Cortes, (6) Sheriff Esteves, (7) Madera County, a municipal corporation, (8) Chief Tyson Pouge, and (9) Cpt. Rodriguez.

Plaintiff was a pro per litigant in a couple of civil rights actions in this court at the time of the events in this case.  On January 17, 2024, Sgt Rivera directed Defendant Cpl. Gill, Cpl. Schmalls, Joe Martinez, and Cortes to search Plaintiff's dormitory.  The search was initiated right after settling a civil rights action for retaliation cell searches which Sgt. Rivera was a defendant in Case no. 1:20-cv-1567 SKO.  Plaintiff was in the middle of working on a motion regarding evidence and exhibits he intended to introduce at trial in another case, Case no. 1:19-cv-1591 EPG.  The motion had a deadline of January 19, 2024.  After Defendant Sgt. Rivera directed Defendants to search the dormitory, Defendants ordered Plaintiff and cellmates to come out of the dormitory to be physically searched before they were escorted out of the building. As Plaintiff

2

was being searched, Plaintiff made the point to remind the defendants of his constitutional protections with respect to his confidential legal paperwork that was out in the open. Plaintiff requested that they leave his legal paperwork (motion and evidence) as is and not put it in disarray while they searched.  As Plaintiff and cellmates were being escorted to the yard, Defendant Joe Martinez, Cpl. Gill and Cortes advised Plaintiff that his litigations were the cause of the search and Plaintiff's area was the focus of the search.  Defendant Joe Martinez told Plaintiff to watch them strip his bed area before he walked away laughing.  Plaintiff witnessed Joe Martinez, Cortes, Cpl. Gill and Cpl. Schmalls single out his bed area and disregard nine other beds in the dorm.  Plaintiff saw Joe Martinez walk into the cell and go to Plaintiff's bed and sit down and wave at Plaintiff and Defendants Joe Martinez, Cortes, Cpl. Gill and Cpl. Schmalls went through the Plaintiff's legal paper work (motions and evidence) and property confiscating all of his writing supplies as they were found.  After they singled out Plaintiff's bed area, legal paper work and property, Defendants left with all of Plaintiff writing supplies.  Defendant Cpl. Gill and Cpl. Schmalls told Joe Martinez and Cortes to throw Plaintiff's writing supplies away.

After watching defendants single out Plaintiff's bed, the inmates were allowed to return to the dorm.  Plaintiff's area was left in disarray and he straightened it out.  He realized that all of his writing supplies were gone, preventing him from finishing his legal papers.  Plaintiff contends the search was initiated because of the litigations, so he expressed his concern so that he could establish that the defendants' intentional decisions were to cause him to miss his deadline which would prejudice Plaintiff's upcoming trial.  Plaintiff asked why his writing supplies were confiscated.  Plaintiff was approached by Defendants Cpl. Gill and Cpl. Schmalls who acknowledged that their decision were going to cause prejudice from Plaintiff missing his deadline, saying ",mwe don't care."  Plaintiff says that he told them he had a First Amendment right to access to the courts and that their confiscation of his writing supplies established supervisory liability and personal participation. Plaintiff said that the search was retaliation for his litigation and that singling out Plaintiff's bed was discrimination because defendants did not take anything from his cellmates.  He was treated differently than other inmates in similar situation and causing him to miss a deadline could result in Plaintiff's civil rights complaints being

3

dismissed. Defendants Cpl. Gill and Cpl. Schmalls said "they didn't care." Plaintiff was intentionally retaliated against because of his litigating actions in civil rights cases. Plaintiff alleges that defendants action that caused him to miss a filing deadline resulted in his civil rights trial being dismissed. The motion Plaintiff was working on, and the missed deadline, was regarding exhibits of evidence that were to be introduced to the jury during trial on March 12, 2024 (1:19-cv-1591) The trial was dismissed for lack of evidence.

Madera County has authority as employer of the defendants. The custom relied on by Defendants is Madera County's responsibility to prevent and protect Plaintiff from harassment and mistreatment by Sheriff's deputies which has been ongoing. Madera County has a policy of inaction to prevent or protect prisoners in their county jail. This policy of inaction to prevent or protect is the moving force that gives the defendants the authority to subject Plaintiff to retaliation/discrimination and prejudice in a "business as usual" manner, which caused Plaintiff to miss a deadline that resulted in the dismissal of his civil rights trial. Madera County's policy of inaction resulted in the retaliatory cell search/discrimination and prejudice of his civil trial getting dismissed. Plaintiff has filed many cases on the grounds of retaliation and discrimination in the Madera County jail against defendant and Defendant Madera County defended them, showing this is not an isolated incident. The failure to protect Plaintiff's constitutional rights to be free from retaliation/discrimination and prejudice falls on the responsibility of Madera County.

Plaintiff alleges supervisory liability against Tyson Pouge, Esteves, and Cpt. Rodriguez without any personal participation because these officials wrote and implemented an abuse of authority policy that is so deficient that the policy itself if a repudiation of constitutional rights. They created a culture of other supervisors abusing their authority and prisoner rights. The culture is so prevalent that Sgt. Rivera can direct other Defendants, Cpl. Gill, Cpl. Schmalls, Joe Martinez, and Cortes, to conduct a retaliatory cell search on Plaintiff because of his ongoing litigations. Plaintiff was working on his motion regarding evidence for his civil trial a month away. Plaintiff respectfully told the Defendant to ensure Plaintiff's rights were not violated but Plaintiff was singled out by confiscating his supplies which they knew he need to finish his motions. Supervisory liability exists against Sgt Rivera, Cpl. Gill and Cpl. Schmalls were Sgt.

4

1  Rivera directed defendants to search Plaintiff's property for reasons ligations.

2  Chief Tyson Pouge, Sheriff Esteves and Cpt. Rodrigues are responsible for the operation of the Madera County jail and the abuse of authority culture was well established in the inadequate training of the Madera County department of corrections. Chief Tyson Pouge, Sheriff Esteves and Cpt. Rodrigues had full knowledge of the inadequate training alleged under the department of corrections and chose not to enforce proper correctional methods.  The failure to implement adequate training caused the constitutional violations.  Failure in Madera County jail training, lack of supervision and continued illegal conduct demonstrated by defendants fall on the administration defendants Chief Tyson Pouge, Sheriff Esteves, and Cpt. Rodriguez.

Sgt Rivera directed the retaliatory search which was the moving force in violating Plaintiff's rights. Plaintiff alleges that on January 17, 2024, Defendants Cpl. Gill, Cpl. Schmalls, Joe Martinez, and Cortes were told to search Plaintiff's cell because of Plaintiff's litigation conduct and did so in retaliation and served no legitimate correctional goal. Plaintiff was a civil detainee when they searched and confiscated his writing supplies and caused him to miss a deadline in a civil trial being dismissed for lack of evidence.

As remedies, Plaintiff seeks compensatory and other damages.

**III.     Discussion**

**Supervisor Liability**

Insofar as Plaintiff is attempting to sue Defendants Tyson Pouge, Esteves, Rivera, and Cpt. Rodriguez, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  "The requisite causal connection may be established

when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570.  Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).  When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff fails to state a claim against Sgt. Rivera.  Plaintiff's allegations are conclusory that he directed the search for retaliatory purposes.

Plaintiff alleges supervisory liability against Tyson Pouge, Esteves, and Cpt. Rodriguez without any personal participation because these officials wrote and implemented an abuse of authority policy that is so deficient that the policy itself if a repudiation of constitutional rights.  Plaintiff's allegation of that they "implemented an abuse of authority policy" is conclusory and fails in specificity as to what each person did or did not do within their specific authority that violated Plaintiff's rights.  Indeed, Plaintiff seeks to impose supervisor liability merely because Tyson Pouge, Esteves, and Cpt. Rodriguez are the supervisors of the cell search officers.  Section 1983 does not permit such supervisor liability. Conclusory allegations that a supervisor promulgated unconstitutional policies and procedures which authorized their subordinates' unconstitutional conduct are speculative and do not suffice to state a claim of supervisory liability. *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018).

A supervisor's failure to train subordinates may give rise to individual liability under Section 1983 where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. *See Canell v. Lightner*, 143 F.3d 1210,

1213-14 (9th Cir. 1998). To impose liability under this theory, a plaintiff must demonstrate the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. Id. at 1214; *see also City of Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). Plaintiff has not alleged facts demonstrating that Defendants Tyson Pouge, Esteves, and Cpt. Rodriguez were deliberately indifferent to a need for more or different training.

**Access to Courts**

Inmates have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). However, the right is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. In order to state a claim for the denial of court access, a prisoner must establish that he suffered an actual injury. *Id.* at 349. "[A]ctual injury [is] actual prejudice with respect to contemplated or existing litigation, such as the ability to meet a filing deadline or to present a claim." *Id.* at 348; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quoting *Lewis*, 518 U.S. at 353 & n.3); *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011).

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002). For backward-looking claims, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing *Christopher*, 536 U.S. at 413-14).

The first element requires that Plaintiff show he suffered an actual injury by being shut out of court. *Harbury*, 536 U.S. at 415, 121 S.Ct. at 2187; *Lewis*, 518 U.S. at 351, 116 S.Ct. at 2180; *Phillips*, 477 F.3d at 1076. The second element requires that Plaintiff show a defendant proximately caused the alleged violation of Plaintiff's rights, "[t]he touchstone ... [for which] is foreseeability." *Phillips*, 477 F.3d at 1077. Under the second element, a prisoner "must show that

the alleged violation of his rights was proximately caused by [the defendant.]" *Phillips*, 477 F.3d at 1077; *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 9th Cir. 2008) ("[i]n a § 1983 action plaintiff must show ... demonstrate that the defendant's conduct was the actionable cause of the claimed injury."). Without causation, there is no actionable claim for access to courts. *See Phillips*, 477 F.3d at 1077. Finally, the third element requires that Plaintiff show he has no other remedy than the relief available via this suit for denial of access to the courts. *Id*. at 1078–79.

Plaintiff fails to allege that Plaintiff suffered an actual injury. While Plaintiff alleges that Defendants' conduct caused him to miss a filing deadline, Plaintiff fails to allege any actual harm from the missed deadline. From a review of the docket for Case No. 19-1591,[1] Plaintiff was not shut out of Court or otherwise injured from the missed deadline. Indeed, the case proceeded to a jury trial on March 12, 2024. Case No. 19-1591, Doc. 194. Plaintiff does not allege sufficient facts for a cognizable access to the courts claim because he has not alleged an actual injury, such as actual prejudice with respect to contemplated or existing litigation. Plaintiff alleges that the defendants took his writing supplies, but he was present at trial to present evidence and Plaintiff fails to identify that taking his writing supplies impacted his trial testimony. (See. Case No. 19-1591, e.g., Doc. 194 ("Cornel Jackson sworn and testified").) Plaintiff has been unable to cure this deficiency.

**Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry,* 584 F.3d 1262, 1269 (9th Cir. 2009) ). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish

---

[1] A court may take judicial notice of its own records. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases").

a nexus between the retaliatory act and the protected activity. *Grenning v. Klemme*, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff alleges a retaliatory cell search. Cell searches can be used to further legitimate correctional goals. *See*, *e.g.*, *Lewis v. Wagner*, 14-cv-2264-WQH, 2016 WL 11281165, at *7 (S.D. Cal. June 7, 2016); *Reed v. Tracy*, 3:11–cv–00066–HDM–WGC, 2013 WL 6076460, at *4 (D. Nev. Nov. 18, 2013) ("appropriately performed inmate cell searches undeniably serve a legitimate correctional goal").

Liberally construing the first amended complaint, Plaintiff states a claims against Defendant Joe Martinez, Cpl. Gill, and Cortes. Plaintiff alleges Defendant Joe Martinez, Cpl. Gill and Cortes advised Plaintiff that his litigations were the cause of the search, and Plaintiff's area was the focus of the search. Plaintiff does not state a claim against Cpl. Schmalls because Plaintiff does not allege any facts that Schmalls, although searching Plaintiff's cell area, knew the search was a retaliatory search.

Plaintiff fails to state a claim against Sgt Rivera. Plaintiff alleges Sgt Rivera directed the cell search but fails to allege any factual support that this cell search was retaliatory and the allegations are conclusory.

**Equal protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). A plaintiff may demonstrate violation of the Equal Protection Clause by showing that defendants acted with the intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Here, there are no allegations contained in Plaintiff's complaint suggesting that he is a member of a protected class. Prisoners are not a protected class. *See Rodriquez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999).

Equal protection claims may also arise under a "class of one" theory where the plaintiff claims that he has been "intentionally treated differently from others similarly situated and that

1  there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528
2  U.S. 562, 564 (2000). To state a class-of-one equal protection claim, a plaintiff "must allege facts
3  showing that [he has] been '(1) intentionally (2) treated differently from others similarly situated
4  and that (3) there is no rational basis for the difference in treatment.' " *SmileDirectClub*, 31 F.4th
5  at 1122-23 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Until recently, the
6  Ninth Circuit had "not had occasion to determine what degree of similarity makes a plaintiff
7  'similarly situated' to others in the class-of-one context, and the Supreme Court has offered little
8  guidance on that front." *Id.* at 1123. In *SmileDirectClub*, however, the Ninth Circuit "join[ed] [its]
9  sister circuits in holding that a class-of-one plaintiff must be similarly situated to the proposed
10 comparator in all material respects," noting by way of example that the Second Circuit has
11 "explained that class-of-one plaintiffs must show an extremely high degree of similarity between
12 themselves and the persons to whom they compare themselves," and the Seventh Circuit likewise
13 requires a plaintiff to be "directly comparable in all material respects to the comparator." *Id.*
14 (simplified).
15    At this point in the litigation and liberally construing the allegations, Plaintiff states a
16 claim against defendants Gill, Cortes and Martinez for treating Plaintiff differently (searching
17 only Plaintiff's bed and materials) from similarly situated individuals (other cell mates) without
18 rational basis for the difference in treatment (for retaliatory reasons).
19    ***Monell* Liability**
20    Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where
21 official policy or custom causes a constitutional tort, *see Monell,* 436 U.S. at 690; however, a city
22 or county may not be held vicariously liable for the unconstitutional acts of its employees under
23 the theory of respondeat superior, *see Board of Cty. Comm'rs. of Bryan Cty. v. Brown,* 520 U.S.
24 397, 403 (1997); *Monell,* 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir.
25 1995). Local governing bodies therefore may be sued directly under § 1983 for monetary,
26 declaratory or injunctive relief for the violation of federal rights. *See Monell*, 436 U.S. at 690.
27 They are absolutely immune from liability for punitive damages under § 1983, however. *See City*
28 *of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

To impose municipal liability under § 1983 for a violation of constitutional rights resulting from governmental inaction or omission, a plaintiff must show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).

A local governmental entity may be liable if it has a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt*, 954 F.2d at 1474). The custom or policy of inaction must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *City of Canton*, 489 U.S. at 389; *Oviatt,* 954 F.2d at 1477 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality opinion)). To plead a *Monell* claim through a longstanding practice or custom, it "must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.' " *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Monell*, 436 U.S. at 691). To state a claim arising from the execution of a local entity's policy or custom, Plaintiff must set forth factual allegations to show that the execution of a specific policy, ordinance, regulation, custom or the like was the "actionable cause" of any alleged constitutional violation. *See*, *e.g., Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but-for and proximate causation"). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citations omitted).

Plaintiff alleges that Madera County has a policy of inaction to prevent or protect prisoners in their jail with "business as usual" manner causing Plaintiff to miss a deadline in a

1 civil rights case. Plaintiff's generalized allegation of inaction to prisoners is insufficient to state a
2 policy of deprivation of rights. A complaint alleging a *Monell* violation "may not simply recite
3 the elements of a cause of action, but must contain sufficient allegations of underlying facts to
4 give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel.*
5 *Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *Little v. Gore*, 148 F.Supp.3d
6 936, 957 (S.D. Cal. 2015) ("Courts in this circuit now generally dismiss claims that fail to
7 identify the specific content of the municipal entity's alleged policy or custom."). Plaintiff's
8 conclusory allegations of a policy of inaction do not support an inference that the practices were
9 widespread and so well settled as to constitute a custom or usage. Plaintiff's allegations merely
10 attempt to impose respondeat superior liability. "When one must resort to inference, conjecture
11 and speculation to explain events, the challenged practice is not of sufficient duration, frequency
12 and consistency to constitute an actionable policy or custom." *Trevino*, 99 F.3d at 920.

13      To the extent that Plaintiff purports to allege that Madera County is responsible for the
14 allegedly unconstitutional actions of one or more of defendants arising from a "failure to train"
15 their employees, Plaintiff does not state sufficient factual allegations, and the only factual
16 allegation pertains to his circumstances. The complaint does not contain specific factual
17 allegations supporting the existence of a policy, custom, or practice. Aside from his own
18 experience, Plaintiff does not reference any specific instances of unlawful conduct or events that
19 form the basis for a culture of inaction.

20 **IV.     Conclusion and Recommendation**

21      Based on the above, the Court finds that Plaintiff's first amended complaint states a
22 cognizable claim against Defendants Joe Martinez, Cpl. Gill, and Cortes for retaliation in
23 violation of the First Amendment and against Defendants Joe Martinez, Cpl. Gill, and Cortes for
24 violation of the Equal Protection clause of the Fourteenth Amendment. However, Plaintiff's
25 second amended complaint fails to state any other cognizable claims. Despite being provided
26 with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified
27 deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130
28 (9th Cir. 2000).

Accordingly, the Clerk of the Court is DIRECTED to randomly assign a District Judge to this action.

Further, is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed on September 13, 2024, (ECF No. 7), against Defendants Joe Martinez, Cpl. Gill, and Cortes for retaliation in violation of the First Amendment and against Defendants Joe Martinez, Cpl. Gill, and Cortes for violation of the Equal Protection clause of the Fourteenth Amendment.
2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 2, 2024**             /s/ *Barbara A. McAuliffe*
                                          UNITED STATES MAGISTRATE JUDGE